TRINA A. HIGGINS, United States Attorney (7349)
ADAM S. ELGGREN, Assistant United States Attorney (11064)
TRAVIS K. ELDER, Assistant United States Attorney (11987)
Attorneys for the United States of America
111 South Main Street, Ste. 1800 | Salt Lake City, Utah 84111
Tel: 801.524.5682 | Fax: 801.325.3399 | adam.elggren@usdoj.gov | travis.elder@usdoj.gov

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MISCELLANEOUS FIREARMS AND RELATED PARTS AND EQUIPMENT LISTED IN EXHIBIT A,<br><br>Defendants. | **VERIFIED COMPLAINT FOR FORFEITURE *IN REM*** |

Pursuant to Supplemental Rule G(2) of the Federal Rules of Civil Procedure, the United States of America files this *in rem* action for forfeiture and alleges:

## **NATURE OF THE ACTION**

1.    This is a forfeiture action under 18 U.S.C. § 924(d) and 26 U.S.C. § 5872(a). The United States seeks the forfeiture of Miscellaneous Firearms and Related Parts and Equipment Listed in Exhibit A ("Defendant Property") because it represents firearms and parts involved in or used in knowing or willful violations of 18 U.S.C. §§ 922(o) and 922(a)(4), 26 U.S.C. §§ 5861(d), (e), (f) and (i), and 26 U.S.C. § 7302.

(Maxwell)

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction 28 U.S.C. §§ 1345 and 1355(a) and in

rem jurisdiction is property under 28 U.S.C. § 1355.

3.      Venue in this Court is proper under 28 U.S.C. §§ 1355(b)(1)(A) and 1391(b)

because acts giving rise to the forfeiture or a substantial part of the events or omissions giving

rise to the claim occurred in the District of Utah, and under 28 U.S.C. § 1395 because some of

the Defendant Property was seized in the District of Utah.

## PARTIES

4.      Plaintiff is the United States of America.

5.      The Defendant Property consists of the miscellaneous firearms and related parts

and equipment listed in Exhibit A.

6.      The Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") in Salt Lake

City, Utah has custody of the Defendant Property.

7.      On behalf of Rare Breed Triggers, LLC, as its counsel, as owner of Rare Breed

Triggers, LLC, and himself, Kevin C. Maxwell filed a claim to some of the Defendant Property

in ATF's administrative forfeiture proceeding against the Defendant Property. Lawrence

Alexander Demonico was the president of Rare Breed Triggers, LLC. Both Kevin C. Maxwell

and Lawrence Alexander Demonico are over the age of 18.

(Maxwell)

## BACKGROUND

8.      Under the National Firearms Act ("NFA"),[1] a firearm includes "a machinegun."

26 U.S.C. § 5845(a).

9.      Under 26 U.S.C. § 5845(b) a machinegun includes:

> … any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger . . . [and] any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled . . . .

10.     Under 27 C.F.R. § 479.11(a) the meaning of "machinegun," is further refined:

> For purposes of this definition, the term "automatically" as it modifies "shoots, is designed to shoot, or can be readily restored to shoot," means functioning as the result of a self-acting or self-regulating mechanism that allows the firing of multiple rounds through a single function of the trigger; and "single function of the trigger" means a single pull of the trigger and analogous motions. The term "machine gun" includes a bump-stock-type device, i.e., a device that allows a semi-automatic firearm to shoot more than one shot with a single pull of the trigger by harnessing the recoil energy of the semi-automatic firearm to which it is affixed so that the trigger resets and continues firing without additional physical manipulation of the trigger by the shooter.

11.     The NFA requires all firearms, not in the possession or control of the United

States, to be registered in the National Firearm Registration and Transfer Record ("NFRTR").

Specifically, "[e]ach manufacturer, importer, and maker shall register each firearm he

manufactures, imports, or makes." 26 U.S.C. § 5841(b). And, "[e]ach firearm transferred shall be

registered to the transferee by the transferor." *Id*.

---

[1] Chapter 53 of Title 26 in the United States Code (26 U.S.C. § 5801, et seq.).

(Maxwell)

12.     18 U.S.C. § 922(o) prohibits the transfer and possession of machineguns, by non-government entities and the lawful transfer and possession of machineguns lawfully possessed at the time 922(o) came into effect. This provision has been in effect since May 19, 1986, and the exceptions to 922(o) are not applicable to this matter.

13.     18 U.S.C. § 922(a)(4) prohibits any person, other than a licensed importer, licensed manufacturer, licensed dealer, or licensed collector from transporting in interstate commerce any machinegun, among other types of firearms regulated by the NFA, except as may be authorized by the Attorney General.

## FACTS

14.     On or about April 1, 2021, an ATF Special Agent working with the ATF Internet Investigations Center (IIC) initiated an inquiry into a "forced reset trigger" identified as a "Rare Breed Trigger." The trigger was advertised on the www.rarebreedtriggers.com and www.rarebreedfirearms.com websites and suspected of being a machinegun.

**Initial Undercover Purchase and FATD Determination**

15.     During May 2021, an ATF Special Agent, acting in an undercover ("UC") capacity, purchased a Rare Breed Trigger Model FRT-15 trigger ("RBT Trigger"), through a third-party website, and had it shipped to the UC's Mailbox. Earlier attempts to purchase the RBT Trigger directly from Rare Breed Triggers, LLC were unsuccessful because the RBT Trigger had been sold out.

(Maxwell)

16.     In June 2021, an ATF UC retrieved a package from the UC Mailbox. The package contained a RBT Trigger. The RBT Trigger was sent to ATF's Firearms and Ammunition Technology Division ("FATD") for determination.

17.     On or about July 15, 2021, ATF FATD issued a determination report on its findings of the RBT Trigger. A FATD Firearms Enforcement Office ("FEO") determined that the RBT Trigger is a combination of parts, designed and intended for use in converting a weapon (AR15-type) into a machinegun; therefore, it is a "machinegun" as defined by 26 U.S.C. § 5845(b).

18.     The July 15, 2021 determination report found, in part:

  a.   The RBT Trigger has no serial number as required by 26 U.S.C. § 5842.

  b.   The RBT Trigger is an AR15-type drop-in fire-control group with the following features and characteristics:

       i.    a ¼ inch-wide hammer, trigger, and locking bar;

       ii.   aluminum housing;

       iii.  two tubular pins;

       iv.   one solid pin;

       v.    three springs;

       vi.   two pins with interior threads at both ends;

       vii.  four hex head screws with exterior threads;

  c.   The RBT Trigger has printed on the right side of its aluminum housing:

(Maxwell)

RARE BREED
-TRIGGERS-
US PAT. 10514223

d. The RBT Trigger is identifiable from U.S. Patent #10,514,223 B1 and functions on the same mechanical principle as U.S. Patent #10,254,067 B2.

e. U.S. Patent #10,514,223 B1 specifically states that this is a device which "causes the trigger to be forcibly reset," and "once reset, movement of the trigger is blocked by a locking bar and cannot be pulled until the bolt has returned to battery, thus preventing 'hammer follow' behind the bolt or bolt carrier."

f. The RBT Trigger does not function by "hammer follow."

g. The FATD has also evaluated devices which prevented the trigger from positively resetting and resulted in a "hammer-follow" scenario. A device designed to prevent the hammer from positively resetting could cause a firearm to shoot automatically more than one shot, without manual reloading, by a single function of the trigger, and would also be classified as a combination of parts designed and intended, for use in converting a weapon into a machinegun; thus a "machinegun" as defined in 26 U.S.C. § 5845(b).

h. The incorporation of a positive disconnecting or trigger resetting feature alone, does not preclude or remove such a weapon or device from the definition of a "machinegun." Although the presence of "hammer follow" may require classification of a firearm as a machinegun, this is just one way in which a firearm can satisfy the "machinegun" definition. Therefore, the mere absence of

(Maxwell)

"hammer-follow" in an AR-type firearm does not exclude it from classification as a machinegun. Machinegun classifications are based on the examination of the device and whether the device converts a weapon to shoot automatically.

i.   Under 27 CFR § 479.11, the term "automatically" as it modifies "shoots, is designed to shoot, or can be readily restored to shoot," means functioning as the result of a self-acting or self-regulating mechanism that allows the firing of multiple rounds through a single function of the trigger. Federal courts have long held that "automatically" means that the weapon "fires repeatedly with a single pull of the trigger." *Staples v. United States*, 511 U.S. 600, 602 n.1 (1994). "That is, once its trigger is depressed, the weapon will automatically continue to fire until its trigger is released or the ammunition is exhausted." *Id.*

j.   Further, under 27 CFR § 479.11, "single function of the trigger" means a single pull of the trigger and analogous motions. Courts have specifically affirmed ATF's interpretation that a single act of the shooter to initiate the firing sequence is a single function of the trigger. *Atkins v. United States*, 312 F. App'x 197, 200 (11th Cir. 2009); *Freedom Ordnance Mfg. v. Brandon*, No. 3:16-cv-00243-RLY-MPB, 2018 U.S. Dist. LEXIS 243000, at *14 (S.D. Ind. Mar. 27, 2018). *United States v. Fleischli*, 305 F.3d 643, 655 (7th Cir. 2002) (in which electronic switch was the trigger when it served to initiate the firing sequence and the minigun continued to fire until the switch was turned off or the ammunition was exhausted). In *Freedom Ordnance Mfg.*, the United States District Court of

(Maxwell)

Indiana confirmed that ATF was not arbitrary and capricious in the classification of an "electronic reset assist device" as a machinegun even though the firearm's trigger reset before each shot by pushing the shooter's finger forward. *Freedom Ordnance Mfg.*, 2018 LEXIS 243000, at *14. In these cases, a firearm is a machinegun when an internal mechanism or operation automatically forces the individual's finger forward instead of requiring that the shooter release the trigger.

k.  If a device is designed to assist in preventing the hammer from positively resetting or which utilizes a spring, electric motor or non-manual source of energy which assists in the automatic resetting of the hammer and causes a firearm to shoot automatically more than one shot, without manual reloading, by a single function of the trigger, such an item or device would be classified as a combination of parts designed and intended, for use in converting a weapon into a machinegun; thus a "machinegun" as defined in 26 U.S.C. § 5845(b).

l.  Using an assembled an AR15-type firearm from the National Firearms Collection ("NFC") with a Bushmaster AR15-type receiver, H3 buffer, M16-type upper assembly, with the RBT Trigger installed, a FATD FEO conducted a test fire on June 7, 2021, at the ATF test range in Martinsburg, West Virginia. The FATD FEO used commercially available, Federal brand, 5.56x45mm caliber ammunition and a magazine from the NFC.

m.  In conducting the test fire, the FATD FEO inserted a one-round ammunition load, charged the weapon, and with the selector in the "FIRE" position, pulled the

(Maxwell)

trigger. The NFC weapon, with the RBT Trigger installed, successfully expelled a single projectile by the action of an explosive. A repeat of this test fire obtained the same result.

n.  In conducting another test fire, the FATD FEO inserted a two-round ammunition load, charged the weapon, and with the selector in the "FIRE" position, pulled the trigger. The NFC weapon, with the RBT Trigger installed, fired two rounds automatically by a single pull/function of the trigger. A repeat of this test fire obtained the same result.

o.  The FATD FEO conducted the same test again except the FATD FEO loaded five rounds. This test resulted in five rounds automatically firing by a single pull/function of the trigger. A repeat of this test fire obtained the same result.

p.  The RBT Trigger incorporates parts that are novel to the operation of a typical AR-type semiautomatic firearm. These unique parts (hammer, trigger and locking bar) within the RBT Trigger mechanism are specifically designed to incorporate the standard rearward and forward movement of the AR-type bolt carrier in its cycle of operations allowing the weapon to function as a self-acting, or self-regulating, mechanism. In a typical AR-type firearm, the rearward movement of the bolt carrier extracts, then ejects a cartridge case, and cocks the hammer. With the RBT Trigger installed, the rearward movement is also utilized to eliminate the necessity for the shooter to release their pull of the trigger. In a typical AR-type firearm, the forward movement of the bolt carrier loads a subsequent cartridge,

(Maxwell)

and locks the bolt, while the RBT Trigger also utilizes this forward movement to automatically release the trigger and hammer, allowing the weapon to expel a second projectile without a separate pull of the trigger. In this way, one continuous pull of the trigger allows a semiautomatic firearm to shoot more than one shot. This mechanical action and principle is explained in U.S. Pat. #10,514,223 and U.S. Patent # 10,254,067 B2, and demonstrated by the above-noted test-fires.

q. The RBT Trigger is a "machinegun" as defined in 18 U.S.C. § 921(a)(23).

r. The RBT Trigger, being a machinegun, is also a "firearm" as defined in 26 U.S.C. § 5845(a)(6).

s. The RBT Trigger is not marked in accordance with 26 U.S.C. § 5842(a).

**Request to Cease and Desist to Rare Breed Triggers, LLC**

19.     On or about July 27, 2021, ATF Tampa Field Division Special Agent in Charge ("SAC") and Division Counsel met with Kevin C. Maxwell ("Maxwell") at the Orlando Field Office regarding the sale and manufacture RBT Triggers. Maxwell is counsel for, and an owner of, Rare Breed Triggers, LLC. At the meeting, the SAC served Maxwell with a cease-and-desist letter demanding that Rare Breed Triggers, LLC immediately stop all of its manufacturing and transferring activities related to RBT Triggers and that it work with ATF to develop a plan to address the RBT Triggers already sold or distributed.

20.     Neither Maxwell, nor Rare Breed Triggers, LLC provided any RBT Triggers to ATF FATB for examination and classification before selling RBT Triggers to the public.

(Maxwell)

**Undercover Purchase Post Cease-and-Desist Letter**

21.     In August 2021, an ATF UC visited the www.rarebreedtriggers.com website and made two separate purchases of RBT Triggers which were shipped to the UC's Mailbox.

22.     In August 2021, an ATF UC retrieved a package from the UC Mailbox. The package contained an RBT Trigger. The RBT Trigger was sent to FATD for determination.

23.     On or about August 19, 2021, Lawrence Alexander Demonico ("Demonico"), purported president of Rare Breed Firearms and Rare Breed Triggers, LLC, posted a public video on VIMEO acknowledging personal service of a Cease-and-Desist letter from ATF, which classified RBT Triggers as a machinegun. In the video, Demonico states that "Rare Breed Triggers" would not be complying with ATF's cease-and-desist letter. Demonico acknowledges in the video that it is the "ATF's Firearms Technology Branch" that determines whether "items like the FRT-15 . . . [are] a machinegun per definitions in the GCA and the NFA."

24.     On or about October 19, 2021, ATF FATD issued a determination report on its findings of the RBT Trigger purchased in August 2021. A FATD FEO determined that the RBT Trigger assembly is a combination of parts, designed and intended for use in converting a weapon into a machinegun; therefore, it is a "machinegun" as defined by 26 U.S.C. § 5845(b).

25.     The package received by ATF in August 2021, showed it was shipped from "Rare Breed Triggers" in Logan, Utah. ATF determined the address associated with "Rare Breed Triggers" in Logan, Utah, was the address of 3rd Gen Machine, Inc.

(Maxwell)

**3rd Gen Machine Request to Cease-and-Desist**

26.     On January 13, 2022, ATF Special Agents traveled to 3rd Gen Machine in Logan,

Utah, and served Evan Michael Jones and Jonathon William Robinson of 3rd Gen Machine with

a cease-and-desist letter regarding RBT Triggers.

27.     On or about January 14, 2022, ATF conducted an interview of a Confidential

Source ("CS") who has a vast knowledge of Rare Breed Triggers, LLC. During the interview the

CS provided numerous details of the innerworkings of Rare Breed Triggers, LLC. The CS stated

Rare Breed Triggers, LLC contracted with 3rd Gen Machine, located in the state of Utah, to

manufacture/assemble all RBT Triggers. The CS also stated that Rare Breed Triggers, LLC

utilizes 3rd Gen Machine to drop ship the triggers directly from their facility in Utah. 3rd Gen

Machine would print out the shipping labels and ship them out of the Utah facility; however, the

return label would indicate it was shipped from Rare Breed Triggers, LLC located in Florida.

**Undercover Purchase of an RBT Trigger by a Prohibited Person**

28.     On or about January 19, 2022, ATF conducted an undercover operation. A

firearm was purchased from a 10-time, previously convicted felon in Orem, Utah. The firearm

was equipped with a RBT Trigger. The firearm was sent to ATF FATD for determination.

29.     On or about February 15, 2022, ATF FATD issued a verbal preliminary

determination report on its examination of the RBT Trigger. A FATD FEO determined that the

firearm seized on January 19, 2022, contained an RBT Trigger assembly. The FEO concluded

the RBT Trigger assembly is a combination of parts, designed and intended for use in converting

a weapon into a machinegun; therefore, it is a "machinegun" as defined by 26 U.S.C. § 5845(b).

(Maxwell)

**Undercover Purchases Post Cease-and-Desist Request to 3rd Gen Machine, LLC**

30.     In February 2022, an ATF UC visited the rarebreedtriggers.com website and purchased two RBT Triggers and requested shipment to the UC's mailbox.

31.     In February 2022, an ATF UC retrieved two packages from the UC mailbox. Both packages contained an RBT Trigger. Both packages were shipped from Logan, Utah with the address of pickup from 3rd Gen Machine, Inc., but return labels for Rare Breed Triggers, LLC in Florida.

32.     On or about March 17, 2022, the ATF FATD issued a final determination report on its findings of both the packages with the RBT Triggers purchased in February 2022. The FATD FEO determined that both RBT Triggers are a combination of parts, designed and intended for use in converting a weapon into a machinegun; therefore, they are "machineguns" as defined by 26 U.S.C. § 5845(b).

**Search Warrant of 3rd Gen Machine in Logan, Utah**

33.     On or about March 26, 2022, ATF agents executed a search warrant at 3rd Gen Machine located at 1435 N 200 W, Logan, Utah. The ATF seized RBT Triggers, parts, and firearms at this location. These seized items are included in Exhibit A.

**Firearms Interdiction**

34.     On or about April 14, 2022, ATF agents received information that 3rd Gen Machine placed boxes of an unknown quantity of assembled RBT Trigger devices and component parts on a pallet wrapped in plastic in their parking lot for pickup by the ATF. Prior to the ATF retrieving the pallet, Demonico with Rare Breed Triggers, LLC arrived the same day

(Maxwell)

at 3rd Gen Machine and loaded the boxes contained on the pallet, which included the assembled RBT Trigger devices and component parts, into a U-Haul van.

35.     ATF contacted 3rd Gen Machine and spoke with the general manager. He indicated he was in a meeting with an employee and Demonico walked in and interrupted stating, "I'm here to take my shit [referring to RBT Triggers]." The manager told him not to take the items and advised ATF was coming to take them. Demonico responded, "I don't care."

36.     Demonico loaded the boxes from the pallet into a U-Haul van. Demonico drove to the Salt Lake International Airport, where he rented a 2021 Chevrolet Equinox. He transferred the boxes from the U-Haul to the Chevrolet Equinox.

37.     On or about April 15, 2022, Demonico's rental vehicle was observed near Albuquerque, New Mexico. A search of the vehicle was conducted and resulted in the recovery and seizure of the items taken from 3rd Gen Machine. These seized items are included in Exhibit A.

**Maine Seizure**

38.     During December 2022, ATF arrived at North East Coatings in Sanford, Maine. The North East Coatings manager, Jeff Langlois, reported to ATF they were in possession of a large amount of small firearm parts previously shipped from 3rd Gen Machine in Logan, Utah earlier in 2022. 3rd Gen Machine had requested North East Coatings to perform specific preparation and coating of the parts. After receiving the items, 3rd Gen Machine ordered North East to cancel the work. When North East attempted to make arrangements to return the items to

(Maxwell)

3rd Gen Machine, they refused the shipment due to the ATF seizures. North East Coatings contacted ATF for assistance.

39.     During December 2022, Langlois met with ATF personnel at the North East Coatings facility in Sanford, Maine. The items from 3rd Gen Machine were located on two pallets. The boxes bore labels from 3rd Gen Machine. The pallets were seized and transported to ATF. These seized items are included in Exhibit A.

40.     None of the items listed in Exhibit A are registered in the NFRTR.

### FIRST CAUSE OF ACTION
**18 U.S.C. § 924(d)**
**(forfeiture of firearms involved in violations of 18 U.S.C. § 922(o))**

41.     The United States reasserts all allegations previously made.

42.     Under 18 U.S.C. § 924(d) any firearm involved in or used in any violation of any U.S. criminal law is subject to seizure and forfeiture.

43.     Under 18 U.S.C. § 922(o) it is illegal for any person to transfer or possess a machinegun.

44.     As set forth above, the Defendant Property was involved in violations of 18 U.S.C. § 922(o).

45.     Consequently, the Defendant Property is subject to civil forfeiture under 18 U.S.C. § 924(d).

### SECOND CAUSE OF ACTION
**26 U.S.C. § 5872**
**(forfeiture of firearms involved in violations of 26 U.S.C. § 5861(d))**

46.     The United States reasserts all allegations previously made.

(Maxwell)

47.     Under 26 U.S.C. § 5872 any firearm involved in any violation of the provisions of the National Firearms Act shall be subject to seizure and forfeiture.

48.     Under 26 U.S.C. § 5861(d), it unlawful for any person "to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record."

49.     As set forth above, the Defendant Property was involved in violations of 26 U.S.C. § 5861(d).

50.     Consequently, it is subject to civil forfeiture under 26 U.S.C. § 5872.

## THIRD CAUSE OF ACTION
### 26 U.S.C. § 5872
**(forfeiture of firearms involved in violations of 26 U.S.C. § 5861(e))**

51.     The United States reasserts all allegations previously made.

52.     Under 26 U.S.C. § 5872 any firearm involved in any violation of the provisions of the National Firearms Act shall be subject to seizure and forfeiture.

53.     Under 26 U.S.C. § 5861(e) it is unlawful for any person to transfer unregistered machineguns.

54.     As set forth above, the Defendant Property was involved in violations of 26 U.S.C. § 5861(e).

55.     Consequently, it is subject to civil forfeiture under 26 U.S.C. § 5872.

## FOURTH CAUSE OF ACTION
### 26 U.S.C. § 5872
**(forfeiture of firearms involved in violations of 26 U.S.C. § 5861(f))**

56.     The United States reasserts all allegations previously made.

(Maxwell)

57.     Under 26 U.S.C. § 5872 any firearm involved in any violation of the provisions of the National Firearms Act shall be subject to seizure and forfeiture.

58.     Under 26 U.S.C. § 5861(f) it is unlawful for any person to make an unregistered machinegun.

59.     As set forth above, the Defendant Property was involved in violations of 26 U.S.C. § 5861(f).

60.     Consequently, it is subject to civil forfeiture under 26 U.S.C. § 5872.

### FIFTH CAUSE OF ACTION
**26 U.S.C. § 5872**
**(forfeiture of firearms involved in violations of 26 U.S.C. § 5861(i))**

61.     The United States reasserts all allegations previously made.

62.     Under 26 U.S.C. § 5872 any firearm involved in any violation of the provisions of the National Firearms Act shall be subject to seizure and forfeiture.

63.     Under 26 U.S.C. § 5861(i) it is unlawful for any person to possess any machinegun not identified by a serial number.

64.     As set forth above, the Defendant Property was involved in violations of 26 U.S.C. § 5861(i). Consequently, it is subject to civil forfeiture under 26 U.S.C. § 5872.

### SIXTH CAUSE OF ACTION
**26 U.S.C. § 5872**
**(forfeiture of firearms involved in violations of 26 U.S.C. § 7302)**

65.     The United States reasserts all allegations previously made.

66.     Under 26 U.S.C. § 5872 any firearm involved in any violation of the provisions of the National Firearms Act shall be subject to seizure and forfeiture.

(Maxwell)

67.     Under 26 U.S.C. § 7302 it is unlawful for any person to violate the provisions of the Internal Revenue laws or regulations prescribed under such laws.

68.     As set forth above, the Defendant Property was involved in violations of 26 U.S.C. § 7302.

69.     Consequently, they are subject to civil forfeiture under 26 U.S.C. § 5872.

**SEVENTH CAUSE OF ACTION**
**18 U.S.C. § 924(d)**
**(forfeiture of firearms involved in violations of 18 U.S.C. § 922(a)(4))**

70.     The United States reasserts all allegations previously made.

71.     Under 18 U.S.C. § 924(d) any firearm involved in or used in any violation of any U.S. criminal law is subject to seizure and forfeiture.

72.     Under 18 U.S.C. § 922(a)(4) it is illegal for any person, other than a licensed importer, licensed manufacturer, licensed dealer, or licensed collector, to transport in interstate or foreign commerce any destructive device, machinegun, short-barreled shotgun, or short-barreled rifle, except as specifically authorized by the Attorney General consistent with public safety and necessity.

73.     As set forth above, the Defendant Property was involved in violations of 18 U.S.C. § 922(a)(4).

74.     Consequently, the Defendant Property is subject to civil forfeiture under 18 U.S.C. § 924(d).

(Maxwell)

## **REQUEST FOR RELIEF**

WHEREFORE, the United States respectfully asserts that the Defendant Property is subject to forfeiture by the United States under 26 U.S.C. § 5872 and 18 U.S.C. § 924(d). The United States further requests:

A. That, pursuant to the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, Rule G(3)(b)(ii), the Clerk of the Court issue a Summons and Warrant of Arrest *in Rem* as to the Defendant Property.

B. That Notice of this action be given to all persons known or thought to have an interest in or right against Defendant Property;

C. That a Judgment of Forfeiture be decreed against Defendant Property;

D. That upon the issuance of a Judgment of Forfeiture, the Bureau of Alcohol, Tobacco, Firearms and Explosives or its delegate dispose of Defendant Property according to law; and

E. That the United States receive its costs of court and all further relief to which it is entitled.

Dated this _____ day of February, 2023.

TRINA A. HIGGINS
United States Attorney


 */s/ Adam S. Elggren*___
ADAM S. ELGGREN
Assistant U.S. Attorney


Page **19** of **20**

(Maxwell)

## VERIFICATION

I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives. As a Special Agent with the ATF, my duties and responsibilities include participating in the investigation and prosecution of persons who violate federal laws.

I have read the contents of the foregoing Verified Complaint for Forfeiture *In Rem* and verify under penalty of perjury pursuant to 28 U.S.C. § 1746 that the statements contained therein are true and correct to the best of my knowledge and belief.

Executed on this 13th day of February, 2023.

_____
JONATHAN LEE, Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

(Maxwell)